**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2650-17T3

THE KISLAK CO. INC.,

    Plaintiff-Appellant,

v.

PROMINENT PROPERTIES, LLC,
MYRA PROPERTIES, LLC, LEON
PIRAK, and 627 SEVENTEENTH
AVENUE, LLC,

    Defendants,

and

B&M ESTATES LIMITED LIABILITY
COMPANY, BRENDAN CONHEENEY,
and MICHAEL CHERVENAK,

    Defendants-Respondents.

_____

          Submitted January 7, 2019 – Decided April 3, 2019

          Before Judges Sabatino and Sumners.

          On appeal from Superior Court of New Jersey, Law
          Division, Middlesex County, Docket No. L-3038-14.

W. L. Miller, attorney for appellant.

C. Finnegan & Associates Law Firm, LLC, attorneys for respondents B&M Estates, LLC, Brendan Conheeney, and Michael Chervenak (Christine Finnegan, on the brief).

PER CURIAM

After this bench trial, judgment was entered in favor of plaintiff The Kislak Co., Inc. entitling it to a two percent cooperating realtor's commission on the sale of a forty-two unit apartment building (the property) by defendant Myra Properties, LLC to defendant B&M Estates, Limited Liability Company, for over $4 million. The trial court found defendant Prominent Properties, LLC, a real estate broker, Myra Properties and Leon Pirak were liable for the unpaid commission, but that B&M Estates and its owners, defendants Brendan Conheeney and Michael Chervenak were not liable. Kislak appeals, claiming the court erred in finding that B&M Estates, Conheeney and Chervenak, were not liable for the unpaid commission. Because we conclude the court did not identify its factual and legal findings as to B&M, we remand for it to do so.

We summarize the real estate transaction based upon the trial record. In January 2013, Myra Properties, through its principal Pirak, entered into a written listing agreement with Prominent Properties to sell its property located in the Borough of Lake Como, with a four percent commission of the selling price.

2                                                                 A-2650-17T3

The agreement provided that in the event another realtor found a buyer, the commission would be split evenly with Prominent Properties.

Having interest in the property, business partners Conheeney and Chervenak used Kislak to obtain information and negotiate the purchase of the property. Myra Properties was aware that Kislak was acting on behalf of Conheeney and Chervenak. And Kislak was mindful of the split realtors' commission listing agreement Myra Properties had with Prominent Properties, and expected a two percent commission in the event its clients bought the property.

After extensive negotiations, Conheeney and Chervenak were not willing to offer more than $4.3 million to buy the property, which was $75,000 short of the $4.375 million price demanded by Myra Properties to sell. Considering that a four percent realtor's commission on $4.3 million equaling $172,000 would reduce the sales proceeds to $4.128 million, Myra Properties rejected the offer because it wanted to net at least $4.2 million after the realtors' commission. Interestingly, the $75,000 difference was close to the $87,500 commission that Kislak would earn as its half-share of the commission, if the property was sold for $4.375 million.

 A-2650-17T3

After being advised that Myra Properties was not willing to sell the property for $4.3 million, Conheeney sent an email to Kislak advising that its services were no longer needed regarding the property because he and Chervenak were not interested in buying the property, and had turned their focus towards buying a property in Bayonne. That however was not the case.

Three days later, Prominent Properties received a letter from Peter Cresci, Esq., representing 627 Seventeenth Avenue, LLC, advising that its principals, Conheeney and Chervenak, directed him to offer $4.3 million – the same price they had offered to Myra Properties through Kislak, which was rejected – to purchase the property. The letter further indicated, "[b]uyer(s) have no [r]ealtor" and the "[r]eal [e]state [c]omission to be paid by the [s]eller per their agreement . . . ." Prominent Properties confirmed receipt of the offer and that the buyer had no realtor. The contract of sale reflected that the buyer, 627 Seventeenth Avenue, LLC, had no real estate agent, and a commission of $100,000 would be paid to Prominent Properties at the closing. Thus, there was no mention in the contract that Kislak would receive any commission.

About three months later, the buyer's obligations under the contract were assigned to B&M Estates, which, as noted, was owned by Conheeney and

A-2650-17T3

Chervenak. When the sale of the property closed, the only commission paid was the $100,000 to Prominent Properties, as reflected in the contract of sale.

In response, Kislak sued Prominent Properties, Myra Properties, 627 Seventeenth Avenue, B&M Estates, Conheeney and Chervenak claiming it was deprived of a two percent commission on the property's sale price that it earned from presenting Conheeney and Chervenak, the actual buyers, through 627 Seventeenth Avenue.

Following a two-day bench trial and post-trial briefs, the judge entered an order of judgment and statement of reasons dated November 21, 2016,[1] in favor of Kislak for $86,000 – two percent of the $4.3 million sale price – against Prominent Properties, Myra Properties, jointly and severally. Claims against B&M Estates, Conheeney, Chervenak and Pirak were dismissed. When, however, it was discovered that the order and statement of reasons were not served on the parties, a superseding order entering judgment nunc pro tunc and a statement of reasons were issued on January 5, 2018, reiterating the prior order and statement of reasons. In his one-page statement of reasons, the judge explained that Kislak performed in accordance with a valid and binding "co-

---

[1] The record supplied on appeal does not include a copy of the order or the statement of reasons.

A-2650-17T3

brokerage agreement" between Myra Properties and Prominent Properties, which entitled it to "$86,000 or two [percent] of the [$4.3 million] purchase price, as its commission."

Because the statement of reasons made no mention of why B&M Estates, Conheeney and Chervenak were dismissed, Kislak's counsel wrote a letter and sent a follow-up email to the judge seeking further explanation. Counsel asked whether there was "a statement of reasons and conclusions of law as to the dismissal of claims as to" those defendants, or if "any findings of fact and conclusions of law" were placed "on the record other than as set forth in the written statement of reasons" already provided. In his email reply, the judge stated:

> I did not place anything else on the record. I thought my findings were adequate and the reason for dismissing the claims against B&M and [Conheeney and Chervenak] was that there was no conduct on their part upon which a theory of liability could be found or reasonably inferred.[2]

In a single point brief, Kislak appeals arguing:

---

[2] While we appreciate the efficiency of emails, we suggest that within the letter and spirit of our Rules of Court as they now exist, it is preferable that direct written communication between counsel and the trial judge be through formal written correspondence.

THE COURT ERRED IN DISMISSING THE COMPLAINT AS TO THE BUYER[S] – DEFENDANTS. UNDER HARRIS V. PERL[3] AND ITS PROGENY[,] DEFENDANT PROMINENT [PROPERTIES] [IS] LIABLE TO PLAINTIFF FOR INTERFERING WITH ITS CONTRACTUAL RIGHTS AND PLAINTIFF[']S PROSPECTIVE ECONOMIC ADVANTAGE.

Despite mentioning Prominent Properties – who was found liable with Myra Properties and is not a party to the appeal – in its point heading, Kislak's brief focuses entirely on why B&M Estates, Conheeney and Chervenak should be liable allegedly because they, in concert with the other defendants, intentionally deprived it of a two percent commission on the property's sale. We, however, are unable to determine the merits of this appeal because the trial judge did not set forth adequate findings of fact and conclusions of law for dismissing the claims against B&M Estates, Conheeney and Chervenak.

Our ability to resolve an appeal is largely dependent upon the trial court's compliance with its obligation to state its findings of fact and conclusions of law as required by Rule 1:7-4. To comply, the court must articulate factual findings and correlate them with the principles of law. Curtis v. Finneran, 83 N.J. 563, 570 (1980). We are mindful of the well-established principle that a trial judge's

---

3  41 N.J. 55 (1964).

findings of fact after a bench trial are entitled to deference on appeal so long as they are supported by sufficient credible evidence in the record. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 483-84 (1974). Thus, given that the assessment of Conheeney and Chervenak conduct is the focus of Kislak's appeal, it is essential that we have the benefit of the judge's factual findings as to the role they may have played in Kislak's failure to receive a commission. Accordingly, we are not in a position to exercise original jurisdiction under Rule 2:10-5. Since our review is impeded, a remand is necessary. Elrom v. Elrom, 439 N.J. Super. 424, 443 (App. Div. 2015).

On remand, the parties shall forward their respective appellate briefs to the judge to give him the benefit of the factual and legal arguments presented to this court. We take no position on the merits of those arguments, and we leave it to the judge's discretion to allow the parties to submit additional briefs and have argument, should they desire.

Reversed and remanded to the trial court for specific factual findings and conclusions of law as to the finding of no cause of action against B&M Estates, Conheeney and Chervenak, as required by Rule 1:7-4. The trial court is free to reconsider its findings and conclusions based upon the additional advocacy

presented.  We do not retain jurisdiction.  Any party aggrieved by the outcome

of the remand may file a timely new appeal.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION